TEXAS AND PACIFIC RAILWAY COMPANY V. W. R. BIGHAM.

Decided December 24, 1896.

1. Negligence—Proximate and Remote Cause.

Negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury which, in the light of the attending circumstances, ought to have been foreseen as a natural and probable consequence of the negligence or wrongful act. (P. 225.)

2. Same—Intervening Cause.

The intervention of an independent agency, bringing about the result, does not necessarily render the original cause remote, but bears, more directly, on the question whether the injury ought, under all the circumstances, to have been foreseen; and, where this latter fact appears, the original negligent act ought to be deemed actionable. (P. 227.)

3. Same.

The test is whether a reasonably prudent man, in view of all the facts, would have anticipated the result,—not necessarily the precise actual injury, but some like injury, produced by similar intervening agencies. (P. 227.)

4. Same—Fact Case.

A railway company knowingly permitted the gate of its stock pens to remain with defective fastenings. A shipper placed his cattle in the stock pens to be loaded, and, while endeavoring to fasten the gate with a rope, was knocked down and injured in a stampede of the cattle, caused by their alarm at a passing train. Held, that such injury was not a proximate result of the company's negligence, and a demurrer to the petition should have been sustained. (Pp. 224 to 228.)

5. Same—Case Questioned.

The principles announced in Gonzales v. City of Galveston, 84 Texas, 3, approved, but their application in that case questioned. (P. 228.)

6. Same—Carrier's Liability.

The escape of the cattle was such a consequence as might have been anticipated by the company as a probable result of the defective fastening, and for damage to the cattle thereby a recovery could be sustained. (P, 228.)

ERROR to Court of Civil Appeals, Second District, in an appeal from Taylor County.

Bigham sued the railway company, and obtained judgment in the trial court for both injury to his person and damages to his cattle. Defendant appealed, and on affirmance by the Court of Civil Appeals obtained writ of error.

*B. G. Bidwell,* for plaintiff in error.—The injuries complained of, in order to justify recovery, must be the direct and proximate result of the negligence alleged. Plaintiff's personal injuries are too remote, and are not the proximate result of the negligence complained of. Brandon v Gulf City Cotton Press Co., 51 Texas, 121; Gonzales v. Galveston, 84 Texas, 3; Seale v. Railway, 65 Texas, 274; Railway v. Ware, 67 Texas,

· 635; Hoadley v. Trans. Co., 115 Mass., 307; Hoag v. Railway, 85 Pa. St.,. 293; Charlebois v. Railway, 91 Mich., 59; Henry v. Railway, 50 Cal., 183;. Atkinson v. Trans. Co., 60 Wis., 163; Railway v. Elliott, 55 Fed. Rep., 949; 52 Fed. Rep., 264; 57 Fed. Rep., 921; Motey v. Pickle Marble Co., 74 Fed. Rep., 155.

*J. H. Beall*, for defendant in error.—The personal injuries sustained by plaintiff were the direct and proximate results of defendant's negligence, and the court did not err in overruling the special exception urged on this point.   Gonzales v. City of Galveston, 84 Texas, 3; Sayles' Statutes, art. 4236; Railway v. Trawick, 81 Texas, 270; Railway v. Ross, 27 S. W. Rep., 728; 2 Wait's Acts & Def., 442; 5 Kan., 312, 425; 36 Wis., 592; Railway v. Walker, 70 Texas, 126; Harris v. Railway, 13 Fed. Rep., 591; 38 S. W. Rep., 828; 1 Mo. App., 543; 62 Mo. App., 365; Am. Dig. (1896), 3962; Eames v. Railway, 63 Texas, 660; Bonner v. Wingate, .78 Texas, 337; 5 Am. & Eng. Encycl. Law, 8 (b) and notes.

*Ward & James*, also for defendant in error, filed a motion for rehearing, in support of which they cited and discussed: 1 Shearman and Redfield, sec. 29; Railway v. Juneman, 71 Fed. Rep., 939; Lowery v. Railway, 99 N. Y., 158; Turnpike Co. v. Sears, 7 Conn., 94; Palmer v. Inhabitants of Andover, 2 Cush., 608; Knapp v. Railway, 71 Iowa, 44; Yearr v. Williams, 15 R. I., 20; Railway v. Trowbridge, 26 N. E. Rep., 64; Liming v. Railway, 47 N. W. Rep., 66; Linnehan v. Sampson, 126 Mass., 506; Cottrill v. Railway, 47 Wis., 637; Eckert v. Railway, 43 N. Y., 503; Wasmer v. Railway, 80 N. Y., 212; Rexter v. Starin, 73 N. Y., 602; Smethurst v. Church, 19 N. E. Rep., 387; Lane v. Atlantic Works, 111 Mass., 139; Railway v. Mussette, 86 Texas, 719; Gonzales v. City of Galveston, 84 Texas, 7; Railway v. Sweeney, 36 S. W. Rep., 800; Phillips v. DeWald, 7 S. E. Rep., 151; Plymouth v. Graves, 19 Atl. Rep., 249; Oakland Bank v. Murfey, 9 Pac. Rep., 849; Burrell v. Uncapher; 11 Atl. Rep., 619; West Mahanoy v. Watson, 3 Atl. Rep., 869; Railway v. Arnold, 2 South. Rep., 337; Warren v. City of Denison, 36 S. W. Rep., 404. The motion was overruled.

GAINES, CHIEF JUSTICE.—This suit was brought by defendant in error against the plaintiff in error to recover damages for personal injuries and for injuries to cattle belonging to him, alleged to have resulted from a defective gate to a stock pen of the company.  He recovered a judgment in the trial court upon both causes of action, which was affirmed by the Court of Civil Appeals.

The facts upon which the recovery was claimed are thus stated by the Court of Civil Appeals in their findings:   "On November 25, 1892, the appellee, in accordance with a prearrangement made with the agent of the appellant, a common carrier, for the shipment of his cattle from Merkel to Waxahachie, Texas, had penned the cattle, about one hundred

head, in the stock pens of the appellant provided by it for that purpose. The gate which admitted entrance into the pen was out of repair, and had been for some months, as the appellant knew. The appliances for fastening it were defective. Its condition was due to the negligence of the defendant company.

"In order to prevent the escape of the cattle intended for shipment, the appellee was in the act of fastening it by means of a rope which he had secured for that purpose, when the noise of a passing freight train so frightened the cattle as to reduce them to a condition of panic. They plunged towards the gate and upon it, the one upon the top of the other, and before the appellee could escape they hurled him some twenty feet upon the ground, where he fell unconscious from the violence of the contact. * * * But for the defective condition of the gate the cattle would not have escaped."

The petition alleged the facts substantially in accordance with the foregoing statement. Demurrers were interposed thereto upon the ground that the injuries, both as to the person and the property of the defendant, were not proximately caused by the negligence of the defendant as alleged. The demurrers were overruled and exceptions were taken. The plaintiff having recovered upon the trial, the rulings upon the demurrers were assigned as error upon appeal, and the judgment having been affirmed, they were again assigned in the petition for the writ of error as grounds for a reversal of both judgments by this court.

The maxim that "in law the immediate and not the remote cause of any event is regarded" applies to cases of negligence. The negligence must be the proximate cause of the injury. But the word "proximate" is not happily used in that connection. In ordinary language a proximate cause is the nearest cause; but in a legal sense an act of negligence may be deemed a proximate cause of an injury although it may not be the last cause in a connected succession of events which have led to a result. It is usually laid down in cases of negligence that, in order to constitute the proximate cause of an injury, the injury must be the natural and probable result of the negligent act or omission. Since every event is the result of a natural law, we apprehend the meaning is that the injury should be such as may probably happen as a consequence of the negligence, under the ordinary operation of natural laws. The rule is sometimes put upon the ground that to allow a recovery for injuries resulting from remote causes would lead to intolerable litigation, and this seems to be indicated in Bacon's paraphrase of the maxim quoted above: "It were infinite for the law to consider the causes of causes and their impulsions one of another, therefore it contenteth itself with the immediate cause, and judgeth of acts by that without looking for any further degree." But it seems to us that, as applied to the law of negligence at least, a better ground for the rule is that a party could not be held responsible for the consequences of an act which ought not reasonably to have been foreseen. In other words, it ought not to be deemed negli-

gent to do or to fail to do an act, when it was not anticipated and should not have been anticipated that it would result in injury to anyone. To require this is to demand of human nature a degree of care incompatible with the prosecutions of the ordinary avocations of life. It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed. "It can hardly be negligent, not to provide against what no one can anticipate," says Blackburn, J., in Smith v. Railway, L. R., 6 C. P., 14. And again, "If a man fires a gun across a road where he may reasonably anticipate that persons will be passing, and hits some one, he is guilty of negligence, and liable for the injury he has caused; but if he fires in his own wood, where he cannot reasonably anticipate that anyone will be, he is not liable to anyone whom he shoots, which shows that what a person may reasonably anticipate is important in considering whether he has been negligent; but if a person fires across a road when it is dangerous to do so and kills a man who is in receipt of a large income, he will be liable for the whole damage, however great, that may have resulted to his family, and cannot set up that he could not have reasonably expected to have injured anyone but a laborer." The principle is also illustrated by the remarks of Judge Cooley in the case of Sjogren v. Hall, 53 Mich., 274: "If the accident which occurred was one at all likely to happen—if it was a probable consequence of a person working about the wheel that he would be caught in it, as the plaintiff was—there would be ground for pressing this argument. But the accident cannot be said to be one which even a prudent man would have been likely to anticipate. So far as there is a duty resting upon the proprietor in any of these cases, it is a duty to guard against probable dangers; it does not go to the extent of requiring him to make accidental injuries impossible." In Railway v. Mussette, 86 Texas, 708, Chief Justice Stayton quotes with approval from Lane v. Atlantic Works, 111 Mass., 139, as follows: "The test is to be found in the probable injurious consequences which were to be anticipated, not on the number of subsequent events and agencies which might arise."

In discussing this question, the Supreme Court of the United States say: "The primary cause may be the proximate cause of disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved on a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market-place (2 Bl. R., 89 b). The question always is, Was there an unbroken connection? Would the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was

the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." (Milwaukee Ry. Co. v. Kellogg, 94 U. S., 469.) This is probably as accurate a statement of the doctrine as can be given, and is substantially that generally laid down by the authorities. Upon the doctrine as abstractly stated there is a substantial consensus of opinion. That difficulties arise when we come to apply it to particular cases is not surprising when we reflect, that minds are prone to differ as to such questions; that the degree of probability rises by almost imperceptible gradations; and that the circumstances of such cases are so variant that hardly two can be found which present precisely the same state of facts. Under such circumstances it is hardly to be expected that many cases will not be found, the result of which seemingly do not accord with the doctrine as generally recognized.

But we are not prepared to hold that in no case can the original cause of the injury be deemed the proximate cause, where an independent and disconnected agency has supervened and brought about the result. The fact of the intervention of an independent agency, it occurs to us, bears more directly upon the question whether the injury ought, under all the circumstances, to have been foreseen; and, where this latter fact appears, we think that the original negligent act ought to be deemed actionable. In Seale v. Railway Company, 65 Texas, 274, Chief Justice Willie says: "If the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrongdoer, the current of authority seems to be that the connection is not broken." It follows, that in our opinion, the question of probable cause ought to depend upon the further question, whether a reasonably prudent man, in view of all the facts, would have anticipated the result—not necessarily the precise actual injury, but some like injury, produced by similar intervening agencies.

But we are of the opinion that when we come to apply the doctrine to the facts of the present case all difficulty vanishes. We will first discuss the case with reference to the injuries to the plaintiff's person. Let us ask the question which was propounded in Milwaukee Ry. Co. v. Kellogg, above cited: "Was there an unbroken connection between the wrongful act and the injury—a continuous operation?" We think not. But for the defective fastening to the gate, the injury could not have happened. Hence the alleged negligence of the defendant brought about the condition that rendered the accident possible. The active cause which produced the injury was wholly independent of the negligence of the defendant and wholly disconnected from it.

Ought the agents of the company to have foreseen that, as a result of the imperfect fastening of the gate, the injury, or any injuries similar in character, would probably result? In our opinion, nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury to the person of the plaintiff.

The act of the defendant in permitting the fastening to its gate to become insecure was in itself lawful; and since it was clearly out of the range of reasonable probability that an injury to the person of anyone should result, it should be held as a matter of law that the negligence of the company gave no right of action for such injuries.

The principles announced in Gonzales v. The City of Galveston, 84 Texas, 3, are correct; but we are not clear that they were properly applied in that case. We are clear, however, that a proper application of the doctrine there laid down to the facts of this case leads to a different result. It may be that there is a sound distinction between the cases, growing out of the fact that in the former the city knowingly and unlawfully permitted the obstruction which was the cause of the injury to remain in the street—a question which we need not here decide.

For the injuries to his cattle, we think it equally clear that the petition showed a cause of action. It was the duty of the defendant to safely hold the cattle, and it ought reasonably to have been foreseen that by reason of the defective latch the cattle might escape, and that the plaintiff might thereby suffer a loss. Besides, the defendant had received the cattle under a contract of transportation, and its liability as a common carrier had attached.

There are other questions presented, but we do not think it necessary to determine them.

Because the court overruled the demurrers to the petition, the judgment is reversed and the cause remanded.

*Reversed and remanded.*