**PARKER FOOD STORES, INC., Appellant,**

v.

**L. V. PIERCE, Appellee.**

No. 16464.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 10, 1964.

Rehearing Denied Feb. 7, 1964.

Jackson, Walker, Winstead, Cantwell & Miller, W. B. Patterson and Jack Pew, Jr., Dallas, for appellant.

Mock, Banner & McIntosh, and Jack Banner, Wichita Falls, for appellee.

LANGDON, Justice.

This is a personal injury suit.

Appellee, a customer of appellant's store, brought this suit for injuries sustained when he slipped on a purple ball point pen that was lying on the floor in the aisle of the store. The jury found that appellant's employees did not drop the pen in the aisle and that appellant was not negligent in failing to discover and remove it. The only other liability issues submitted appellee's theory that appellant " * * * was negligent in having the floor of the store constructed of such dark material as to fail to properly illuminate or outline objects placed upon the floor, * * *." The jury found these issues against appellant. Overruling appellant's motion to disregard the answers to such issues and its motion for judgment non obstante veredicto, the district court entered judgment, on the verdict, for appellee in the principal amount of $7,500.00.

Appellant duly filed its motion for new trial which, as amended, set out among other grounds the refusal of the trial court to suppress written interrogatories because of the failure of the deponent to answer a material cross-interrogatory, the prejudicial and inflammatory nature of the oral argument of appellee's counsel, and the fact that the jury's findings as to future medical expenses were not supported by the evidence. The amended motion was overruled, and appellant duly perfected its appeal to this Court.

The points of error presented here are germane to assignments in appellant's motion to disregard answers to certain special issues, its motion for judgment non obstante veredicto, and its amended motion for new trial.

Reversed and rendered.

The case is unique in that the principal question is whether the owner of a store may be negligent and thus liable for damages because of the color of his floor.

The theory upon which appellee obtained the judgment below was pleaded by him as follows: "Further, the Defendant was negligent in having the floor of the store constructed of such dark material as to fail to properly illuminate or outline objects placed upon the floor, or left upon the floor of the store, when it knew or by the exercise of ordinary care, should have known that the dark color and condition of the floor was such as to make it extremely difficult for customers and other invitees to see objects that might have been dropped, spilled, or left on the floor in question." Insufficient lighting was not plead and no issues were requested or submitted as to lighting.

Appellant's merchandise manager, whose deposition was read by appellee, described the floor as "just concrete colored". He testified that it was not even "fairly difficult" to see the pen on the floor. The only other testimony on the point was given by appellee himself. The portions of his testimony relevant to his pleadings and the issues submitted were in essence as follows: He had been in the store around 10 to 15 minutes, possibly 15 minutes before he fell. He noticed one or two, possibly two, other shoppers in the store. As to his action immediately before he fell he testified he was coming towards the front and had his basket

in front of him. He reached over to get some item, "started to take a step to reach and get this when my feet went out from under me, I stepped on an object and my feet went out from under me." He was pushing the basket with both hands, "but I turned and reached with my left hand to get the item which I was after and then is when my feet went out from under me."

After his fall he returned to the store and observed, "the floor, the lighting and things of that nature in there" and testified it is the same or similar to the condition of the floor at the time he fell.

He saw "this" pencil placed on the floor in the area of his fall was not readily apparent, "you couldn't see it at a glance you would have to be looking for it to find it." He described the floor, "A. Well it is concrete and it is old and dark and you might say it is two toned it is two different colors in — * * * Well you might call it two toned, it is two different colors or three or four different colors, it is just like an old floor you know."

On cross-examination he testified essentially that when he walked into the store the day of his fall he did not pay any attention to the floor although he was, "watching where I was going." That the coloring of the floor could have had something to do with his fall. The floor and its color were in plain sight and he looked at the floor. He knew the store as he had been in it before and had not had any trouble before. Further he testified, "A. Well anyone knows when you are shopping that you will look where you are going, you have to raise your eyes to look for your merchandise anyone will tell you that." According to his testimony he apparently had the cart between him and where the pencil was lying and the cart probably passed over it. The cart he was pushing in front of him as he proceeded down the aisle had merchandise in it and the cart could have kept him from seeing the pencil on the floor. Because of this it probably would not have made any

difference if it had been pitch dark in there or as dark as the ace of spades.

Over the appellant's objection special issues Nos. 8, 9 and 10 were submitted to the jury. By their answer to these issues the jury found that the floors were maintained in a dark condition or color; that a person of ordinary prudence and care would not have maintained the floors in a dark condition or color and that the maintenance of the floors in a darkened condition or color was a proximate cause of L. V. Pierce's fall.

▪ It is apparent from the record that appellee obtained a judgment because he slipped and fell on a ball point pen lying in the aisle of appellant's grocery store in spite of jury findings that appellant's employees did not drop the pen on the floor and that the pen was not on the floor for such a length of time that appellant could be charged with negligence in failing to discover and remove it. Thus since the jury absolved the appellant from any responsibility for the fact that the pen was on the floor the judgment must be based solely upon the jury's findings that appellant was negligent in maintaining the floor in "a dark condition or color". The judgment must therefore stand or fall upon the proposition that a store owner is negligent in having a dark colored floor because a floor of such color will not afford a sharp contrast with dark colored objects that, through no fault of the store owner, have been dropped upon it.

In our opinion such a theory of recovery is without foundation in law and is not supported by the facts of this case. To hold otherwise would commit one to the proposition that when white or light objects are dropped upon a floor the store owner is responsible unless he has a dark floor which would readily contrast with the object on the floor. This would require the store owner to have a floor that would in each instance contrast with the object or matter dropped upon it. Such a requirement would be preposterous.

It occurs to us that when the plaintiff has slipped on a foreign substance or object as in this case and he cannot show that the substance or object was on the floor through the fault of the store owner he does not raise an issue of the owner's negligence unless he can show that there was something about the construction or condition of the floor that was inherently unsafe. The cases refer to a concealed or hidden condition or defect—conditions and defects which are not open and obvious and known only to the store owner.

The point is perhaps best illustrated by those cases in which, without the negligence of the store owner, water has collected on the floor and caused it to become wet and slippery. The leading authority is Miller v. Gimbel Bros., 1933, 262 N.Y. 107, 186 N. E. 410, in which the plaintiff, upon entering a store, slipped on a marble entrance that had become wet from the rain. A verdict and judgment in favor of the plaintiff was reversed by the New York Court of Appeals. The Court held: "The owner of a store must take reasonable care that his customers shall not be exposed to danger of injury through conditions in the store or at the entrance which he invites the public to use. He cannot prevent some water and mud being brought into an entrance way on a rainy day and he is not responsible for injuries caused thereby unless it is shown that the construction of the store is inherently dangerous or that he failed to use care to remedy conditions which had become dangerous, after actual or constructive notice of such conditions."

Under similar facts, a directed verdict for the defendant was upheld in Fisher v. Hardesty, 1952, Ky., 252 S.W.2d 877.

The waxing or oiling of a floor is not in itself negligence. Rogers v. Collier, 1949 (Tex.Civ.App., San Antonio), 223 S. W.2d 560, writ refused. Thus, one who slips on a waxed floor cannot recover unless he can prove that the wax was negligently applied or that the floor was inherently

dangerous. If the wax was not negligently applied, the plaintiff is in the same position as was appellee: he must prove that the floor is inherently dangerous. Russell v. Liggett Drug Co., 1941 (Tex.Civ.App., Dallas), 153 S.W.2d 231, writ ref., w. o. m., is such a case. In upholding a directed verdict for the owner, the court said: " 'The construction of the floors of the corridors of an office building with unpolished marble slabs customarily used for such purposes in like buildings does not of itself show a failure of the owner to exercise due care to render the corridors safe for those who may lawfully use them, and one lawfully in the building may not recover for injuries caused by slipping on the floor of a corridor on mere proof of the character of the floor.' " See also Hansen v. Ware's, Inc., 1959 (Tex. Civ.App., San Antonio), 324 S.W.2d 909, no writ history; Kelly v. Loft, Inc., 1940, 124 N.J.L. 185, 11 A.2d 58; Lederman v. Cunningham, 1955 (Tex.Civ.App., Beaumont), 283 S.W.2d 108, no writ history; and Marshall v. San Jacinto Bldg., 1934 (Tex.Civ.App., Beaumont), 67 S.W.2d 372, writ refused.

We are of the opinion that under the authorities a dark floor is not inherently dangerous and that a store owner is not negligent solely because he maintains his floor in a dark condition or color. In Dolan v. Bry Block Mercantile Co., 1938, 23 Tenn. App. 47, 126 S.W.2d 376, cert. den., the plaintiff stumbled on a sloping aisle in a department store. The court in concluding that the store was not negligent in having an aisle that sloped stated: "We are further of the opinion that the fact that this slight incline was covered by dark green linoleum was not of itself an act of negligence, in the sense that the operator of the store could reasonably anticipate that such floor covering would create a dangerous condition."

The appellee does not plead nor did he attempt to prove—that a dark floor is inherently dangerous, or would tend to cause the type of accident that occurred in this

case. In essence his contention was that the dark colored pen did not contrast with the dark colored floor. Admittedly, dark colored objects will show up more readily on a light colored floor than on a dark colored floor and light colored objects will show up better on dark colored floors. Thus, appellee's case is not merely that appellant was required to have a light colored floor, but that appellant had a duty to construct and maintain a floor of such color that it would contrast with any object that anyone might, through no fault of appellant, happen to drop on it. To accept such a theory—the only theory upon which the judgment below could possibly be sustained—would be to make the owner of a retail store an insurer of the safety of his customers. The law is well settled that he is not. Worth Food Markets v. LeBaume, 1938 (Tex.Civ.App., Fort Worth), 112 S. W.2d 1089, writ dism.; Smith v. Safeway Stores, 1943 (Tex.Civ.App., Fort Worth), 167 S.W.2d 1044, no writ history; Great Atlantic & Pacific Tea Company v. Giles, 1962 (Tex.Civ.App., Dallas), 354 S.W.2d 410, writ ref., n. r. e.

■ A dark colored floor is not inherently dangerous. If, however, it may be assumed that there is something dangerous about a dark colored floor, appellant nevertheless cannot be held liable to appellee for any injury resulting therefrom. The color and condition of the floor was open and obvious to appellee, and appellant had no duty to protect him against it. As said in language recently adopted as its own by our Supreme Court: "The owner of premises is not an insurer, and has no duty to protect an invitee against dangers which are well known and obvious." McElhenny v. Thielepape, 155 Tex. 319, 285 S.W.2d 940.

■ "Where the condition is open and obvious, is easily perceptible to the invitee, and there is no hidden defect, it is held no fact issue is raised." Steele v. Slade, 1962 (Tex.Civ.App., Waco), 353 S.W.2d 329, writ refused.

■ The testimony shows beyond question that, at and prior to the time he was injured, appellee was perfectly aware of the dark color and condition of appellant's floor. He knew the store from previous visits, and, as he specifically testified, he looked at the floor when he walked into the building. At the time he fell, he had been in the store about 15 minutes. The store was not crowded, and there was nothing to prevent appellee from further examining the floor. Indeed, he was sufficiently impressed by the floor that when he returned to appellant's store shortly before the trial he was able to recognize that the condition of the floor was "the same or similar to the condition of the floor back at the time" when he fell. Upon the occasion of this latter visit, he observed, by experiment, that he could not easily see a dark colored pencil on the dark colored floor. Under Houston Nat. Bank v. Adair, 1948, 146 Tex. 387, 207 S.W.2d 374, and other Texas decisions, such testimony is conclusive proof that the "color and condition" of appellant's floor, and any danger that might conceivably result from it, was "open and obvious, and easily perceptible to" appellee.

"If the inference might be drawn from the evidence that Mrs. Adair's fall was due to the presence of some liquid or other substance on the stairs, the bank would not be liable because there is no proof that the bank's employees placed it there or knew or had reasonable opportunity to know of its presence. * * * It was also obvious that the stairs were not covered or corrugated, and that no handrails existed except the balustrades on the side of the stairs. The size and shape of the top of each balustrade had not been changed since the building had been constructed, and it was apparent that such surface was too wide to be grasped or gripped from above. All of these conditions being open and obvious to Mrs. Adair when she started down the stairway, it follows as a matter of law that the evidence does not show that the bank violated its duty to Mrs. Adair, and the

plaintiff is barred from recovery because Mrs. Adair voluntarily exposed herself to such risks as existed. See authorities cited above and Restatement, Torts, Sec. 466." (146 Tex. 390–391, 207 S.W.2d 375–376.)

The Texas Supreme Court, speaking through Justice Greenhill, in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, p. 383, said: "The Adair case (supra) may be said to stand for the proposition that when a condition is patently open and obvious and the danger apparent, and when the plaintiff has encountered it many times, he will be charged in law with knowledge and appreciation, and the occupier owes him no duty."

■ The Supreme Court holding in the Adair case is applicable to the facts of this case. The appellee, like Mrs. Adair, was familiar with the premises. He had "ample opportunity to observe their condition." Indeed, unlike Mrs. Adair, he specifically admitted that he had observed their condition. There is no evidence, pleading, or suggestion of any hidden or latent defect. Nor does the fact that the pen was on the floor establish any liability against appellant. There is no proof that appellant's employees placed it there or knew or had reasonable opportunity to know of its presence. The jury found both of these matters in favor of appellant. The mere fact that appellee slipped and fell does not mean that appellant was negligent. There must be evidence that appellant violated its duty to protect appellee "against conditions of the premises which would involve an unreasonable risk" to his safety. See also Stephenson v. Camp, 1958 (Tex.Civ.App., El Paso), 311 S.W.2d 512, writ ref., n. r. e.; Hansen v. Ware's, Inc., 1959 (Tex.Civ.App., San Antonio), 324 S.W.2d 909, no writ history; Contreras v. H. E. B. Grocery Company, 1959 (Tex.Civ.App., San Antonio), 328 S.W.2d 469, writ refused; Morehead v. H. E. Butt Grocery Company, 1960 (Tex.Civ.App., Austin), 333 S.W.2d 428, no writ history.

Wagner v. Lone Star Gas Company, 1961 (Tex.Civ.App., Texarkana), 346 S.W.2d 645, writ ref., n. r. e. Plaintiff slipped on a polished floor in defendant's auditorium. A directed verdict for the defendant was affirmed. The court said: "Her observation of the floor during the time she spent in the auditorium gave her knowledge of its danger equal to any warning the company might have given."

Lederman v. Cunningham, 1955 (Tex.Civ. App., Beaumont), 283 S.W.2d 108, no writ history.

As the foregoing cases show, and as was said in Marshall v. San Jacinto Bldg., 1934 (Tex.Civ.App., Beaumont), 67 S.W.2d 372, writ refused: "'The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. * * * And, hence, there is no liability for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant.'"

The undisputed evidence shows that appellee's knowledge of the condition and color of the floor was equal to that of appellant.

■ "It has been uniformly held by the courts of this State that the right of recovery for injuries resulting from negligence is based upon the violation of a duty." A. C. Burton Co. v. Stasney, 1949, (Tex.Civ. App., Galveston), 223 S.W.2d 310, writ refused.

■ Assuming for a moment that appellant was guilty of negligence in having a dark floor, such negligence could not have been a proximate cause of appellee's fall. Proximate cause embraces at least two distinct concepts, both of which must be present, namely, cause in fact,—a cause which produces an event and without which the events would not have occurred, and foreseeability. Baumler v. Hazelwood, 1961, 162 Tex. 361, 347 S.W.2d 560. In our opinion the "dark color or condition" of the

floor was neither a cause in fact nor a foreseeable cause of appellee's fall.

To resolve the issue of "cause in fact", we need look no further than appellee's own testimony. He admitted there was no causal connection between the color and condition of the floor and the fact that he slipped on the pencil. He testified: that the cart could have kept him from seeing the pencil on the floor and that even if it had been pitch dark or as dark as the ace of spades it probably would not have made any difference.

In determining whether a defendant could reasonably have foreseen that injury to the plaintiff would result from his negligence, Texas courts have followed the opinion of Judge Gaines in Texas & P. Ry. Co. v. Bigham, 1896, 90 Tex. 223, 38 S.W. 162. The court said, "The act of the defendant in permitting the fastening to its gate to become insecure was in itself lawful; and, since it was clearly out of the range of reasonable probability that an injury to the person of any one should result, it should be held, as a matter of law, that the negligence of the company gave no right of action for such injuries."

The court also quoted with approval from a Michigan case, Sjogren v. Hall, 1884, 53 Mich. 274, 18 N.W. 812.

In Bledsoe v. City of Amarillo, 1940 (Tex. Civ.App., Amarillo), 143 S.W.2d 215. There the court said, "Measured by the rules announced in the above authorities, and viewing the pleadings of the appellant in their most favorable light, we think it would be highly speculative to assert that the necessary element of foreseeableness and anticipation of injury is present in the instant case."

See Corpus Christi Speedway v. Morton, 1955 (Tex.Civ.App., San Antonio), 279 S. W.2d 903, no writ history.

See also Houston Lighting & Power Company v. Brooks, 1960, 161 Tex. 32, 336 S.W. 2d 603; Davidson v. Methodist Hospital of Dallas, 1961 (Tex.Civ.App., Dallas), 348 S. W.2d 400, writ ref., n. r. e., and City of

Bryan v. Jenkins, 1952 (Tex.Civ.App., Waco), 247 S.W.2d 925, writ ref., n. r. e. In the case last cited it is stated, "We find no evidence which, in our opinion, shows that appellant should have reasonably foreseen or anticipated that its omission to perform any of the acts alleged by appellees would, *in a continuous sequence unbroken by any new or intervening agency*, probably result in the injury, or some similar injury, * * * of which complaint is made." (Emphasis added).

■ While the facts are somewhat different, the principles announced in the foregoing decisions are controlling here. The act of having a dark floor is not in itself unlawful. Texas & P. Ry. Co. v. Bigham, 1896, 90 Tex. 223, 38 S.W. 162. There is no evidence that anything other than the particular ball point pen in question would not have shown up on the dark floor. The verdict is that appellant's employees did not drop the pencil on the floor. Appellant had no duty to control persons other than his own employees, Corpus Christi Speedway v. Morton, 1955 (Tex.Civ.App., San Antonio), 279 S.W.2d 903, no writ history, much less to see that they did not drop dark colored objects on the floor. To hold appellant liable in this case, it would be necessary to charge appellant with the ability to foresee that persons not under its control would drop an object that would be approximately the same color as the floor and that someone would slip on the object before appellant, in the exercise of ordinary care, could discover and remove it. " * * * nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury of the person of the plaintiff." Texas & P. Ry. Co. v. Bigham, 1896, 90 Tex. 223, 38 S.W. 162. Appellant had "neither a legal nor a moral obligation to guard against that which cannot be foreseen."

In our judgment the learned trial court erred in overruling the appellant's motion to disregard the jury's answer to the liability issues and its motion for judgment non

obstante veredicto. Since the case is being reversed and rendered it is unnecessary to discuss other points raised by the appellant, as it would unduly lengthen the opinion and serve no useful purpose in the disposition of this case.

The judgment awarding damages to the appellee is reversed and judgment is here rendered for the appellant that appellee take nothing by his suit.

Reversed and rendered.